ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **ÁNGEL LUIS TORRES BERRIOS Y OTROS**<br><br>Apelantes<br><br>v.<br><br>**REYNALDO ORTIZ MORALES Y OTROS**<br><br>Apelados | KLAN202400185 | **APELACIÓN**<br>Procedente del Tribunal de Primera Instancia, Sala de Aibonito<br><br>Civil núm.:<br>**CR2023CV00413 (002)**<br><br>Sobre:<br>**COBRO DE DINERO ORDINARIO** |

Panel integrado por su presidenta la juez Domínguez Irizarry, la juez Grana Martínez y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de mayo de 2024.

Comparece ante nos, Ángel Torres Berríos, Myrna Iris Colón Santos y la Sociedad de Bienes Gananciales compuesta por ambos, en adelante, los apelantes o el matrimonio Torres Colón, para que revisemos una "*Sentencia*" emitida el 9 de enero de 2024, notificada el 12 de enero del mismo año por el Tribunal de Primera Instancia, Sala de Aibonito, en adelante, TPI-Aibonito. En la misma, se desestimó la demanda que estos incoaron contra Reinaldo Ortiz Morales, Nydia Martínez Miranda y la Sociedad de Bienes Gananciales compuesta por ambos, en adelante, los apelados o el matrimonio Ortiz Martínez, solicitando que el Tribunal concediera un '*injunction*' a su favor, para que los apelados cesaran la remoción y movimiento de la tierra colindante a su residencia.

Examinado el recurso presentado, así como el derecho aplicable, *procedemos a modificar el dictamen apelado, y así modificado, confirmamos.*

Número Identificador
SEN2024_____

## I.

La situación de hechos que nos ocupan es la siguiente.

El matrimonio Torres Colón posee una vivienda ubicada en la carretera #156, Km. 11.5 en el barrio Palo Hincado en el Municipio de Barranquitas, la cual es colindante con la vivienda del matrimonio Ortiz Martínez.[1] Los apelantes presentaron el 5 de diciembre de 2023, un *'injunction'* solicitando al tribunal que ordene un cese y desista contra el señor Reynaldo Ortiz Morales para que este cesara de remover la tierra en el área colindante de la propiedad de estos.[2] Así también, solicitaron que, contra los apelados, se impusieran costas y honorarios de abogado por la cantidad de $5,000.00.[3]

La razón principal de la solicitud del *'injunction'* es que entre ambas propiedades se encuentra un talud o una pendiente que, desde el año 2017, se encuentra desprendiéndose, causando grietas y debilidades a la residencia de los apelantes.[4] El matrimonio Torres Colón aduce que los trabajos de remoción de tierra del señor Ortiz Morales en el área colindante, agravan la situación en la que se encuentra su propiedad.[5]

El 29 de diciembre de 2023, los apelados presentaron una *"Moción de Desestimación"*, arguyendo que, en primer lugar, no se cumplían los requisitos para emitir el entredicho solicitado, y por lo tanto, procedía la desestimación.[6] Luego de esto, el Tribunal citó para vista el 2 de enero de 2024.[7]

Llegada la fecha para la vista, el Tribunal escuchó los planteamientos de ambas partes con relación a la Moción de

---

[1] Apéndice del Recurso de Apelación, pág. 13.
[2] *Id.*
[3] *Id.*
[4] *Id.* págs. 43-47.
[5] *Id.* págs. 59-60.
[6] *Id.* págs. 51-53.
[7] *Id.* pág. 13.

Desestimación. Según se desprende de la vista celebrada y de la documentación presentada, el desprendimiento del talud comenzó luego del Huracán María en septiembre del año 2017.[8] Para el 29 de agosto de 2020, la parte apelante tuvo acceso al informe preparado por el ingeniero Alejandro Rosado -contratado por estos- en el que les informaba sobre la necesidad de realizar un estudio de estabilidad para determinar el plano de falla y su recomendación como experto sobre la relocalización de la vivienda y demolición de la propiedad.[9]

El 9 de enero de 2024, luego de analizados los planteamientos de las partes, el TPI-Aibonito emitió *"Sentencia"* desestimando la causa de acción del caso de marras, notificando así la misma el 12 de enero de 2024.[10] El Foro Primario concluyó que la parte apelante actuó sin buena fe.[11] En la misma, le impuso en costas, gastos y honorarios al matrimonio Torres Colón, la cantidad de $2,000.00.[12]

El 26 de enero de 2024, los apelantes radicaron una *"Solicitud de Reconsideración conforme a la Regla 47".[13]* La misma fue declarada *"No Ha Lugar"* el 29 de enero de ese mismo año, y notificada el 1 de febrero de 2024.[14]

Inconforme, la parte apelante acudió ante nos mediante un recurso de *"Apelación",* el 27 de febrero de 2024, y en el mismo, le imputa al TPI-Aibonito los siguientes señalamientos de error:

**PRIMERO:** El TPI erró y abusó de su discreción al desestimar la demanda cuando no existían ninguna de las instancias provistas en la Regla 10.2 de las de Procedimiento Civil.

**SEGUNDO:** El TPI erró y abusó de su discreción al determinar que el demandante obró de mala fe e imponer costas y honorarios de abogado a favor de los

---

[8] Apéndice del Recurso de Apelación, pág. 14.
[9] *Id.* págs. 62-63.
[10] *Id.* págs. 13-16.
[11] *Id.* pág. 16.
[12] *Id.*
[13] *Id.* pág. 2.
[14] *Id.* pág. 1.

demandados cuando el récord carece de evidencia para determinar tal hecho porque el juicio no se celebró.

**TERCERO:** El TPI erró y abusó de su discreción al disponer de la demanda mediante una desestimación que no procedía en derecho y a la política judicial de que los casos se ventilen en sus méritos.

La parte apelada compareció el 1 de abril de 2024 con un escrito titulado *"Alegato en Oposición a Apelación Civil"*. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene

obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar su se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

### B.    Apreciación de la Prueba y Prueba oral

Nuestro Tribunal Supremo ha reiterado que la regulación de la práctica revisora requiere que los recursos apelativos sean rigurosa y cuidadosamente observados, de manera que el perfeccionamiento de estos no quede al arbitrio de las partes. *Pueblo v. Pérez Delgado*, 211 DPR 654, 671-672 (2023); *Pérez Soto v. Cantera Pérez, Inc. et al.*, 188 DPR 98, 104-105 (2013); *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 289 (2011).

Como principio general, dentro del derecho probatorio, cuando no existan circunstancias extraordinarias, o indicios de pasión, prejuicio, parcialidad o error manifiesto, la apreciación de la prueba realizada por el Tribunal de Primera Instancia merece deferencia y respeto por parte de este Tribunal. *Hernández Maldonado v. Taco Maker*, supra, pág. 289; *Miranda Cruz y otros v. SLG Ritch*, 176 DPR 951, 974 (2009); *Argüello v. Argüello*, 155 DPR

62, 78-79 (2001); *Trinidad v. Chade,* 153 DPR 280, 289 (2001); *Quiñones López v. Manzano Pozas,* 141 DPR 139, 152 (1996); *Orta v. Padilla,* 137 DPR 927, 937 (1995).

En cuanto a la prueba oral en las revisiones judiciales, nuestro Máximo Foro ha expresado que la adjudicación de credibilidad de un testimonio vertido ante el tribunal de instancia "es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos". *Argüello v. Argüello,* supra, pág. 78; *Pueblo v. Bonilla Romero,* 120 DPR 92, 111 (1987). Es decir, sólo el juez de primera instancia tiene la oportunidad de ver al testigo declarar, escuchar su testimonio en vivo y evaluar su *"demeanor". Ramos Acosta v. Caparra Dairy, Inc.,* 113 DPR 357, 365 (1982).

Presentarle al Foro Revisor la transcripción de la prueba oral, y las demás reglamentaciones apelativas para el perfeccionamiento del recurso, es de gran importancia, ya que, de esta manera, la parte coloca en posición al Tribunal de evaluar la prueba desfilada ante el Foro Primario. De esta manera, pueden cumplir a cabalidad su función revisora. *Pueblo v. Pérez Delgado,* supra, pág. 671. Es decir, no hay manera de evaluar las determinaciones de hechos sobre los cuales descansa el dictamen a revisar si no es a través de una transcripción u otro medio de reproducción de prueba oral que el foro primario tuvo ante sí.

### C. Injunction o entredicho

El interdicto posesorio o *'injunction'* es un procedimiento especial dirigido a proteger al promovente de daños irreparables a su propiedad o a otros derechos mediante una orden que prohíba u ordene ejecutar ciertos actos, gobernado así por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y por los Artículos 675 al

678, 686 al 687 y en 690 al 695 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521-3524, 3532-3533 y 3561-3566. Este remedio extraordinario "se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico". *Plaza Las Américas v. N&H,* 166 DPR 631, 643 (2005), citando a *Peña v. Federación de Esgrima de P.R.,* 108 DPR 147, 154 (1978).

El interdicto es un remedio discrecional que ha de concederse con cautela, luego que el promovente demuestre la existencia de los requisitos para su expedición y que el tribunal realice un balance de conveniencias y equidades.  Véase, 32 LPRA sec. 3523. Entre los requisitos para su expedición se encuentran **la irreparabilidad del daño, la existencia de un remedio adecuado en ley y la probabilidad de prevalecer**. *Mun. de Loíza v. Sucns. Suárez et al.,* 154 DPR 333, 367 (2001).

Los criterios para determinar la concesión o negación de una solicitud de *'injunction'* preliminar son:

> (1) la naturaleza del daño a que está expuesto la parte peticionaria;
> (2) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;
> **(3) la probabilidad de que la parte promovente prevalezca;**
> (4) la probabilidad de que la causa se torne académica;
> (5) el impacto sobre el interés público del remedio que se solicita.
> **(6) la diligencia y la buena fe con que ha obrado la parte peticionaria.**
>
> 32 LPRA Ap. V. R. 57.3.

Por su parte, el interdicto permanente se produce por una sentencia final.  Sin embargo, después del juicio en sus méritos y

antes de ordenar un *'injunction'* permanente, el tribunal debe considerar, nuevamente, la existencia o ausencia de algún otro remedio adecuado en ley. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008). Al determinar si procede otorgar un interdicto permanente, el tribunal deberá considerar igualmente los siguientes criterios: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público involucrado y (4) el balance de equidades. *Plaza Las Américas v. N&H,* supra, pág. 644.

Sobre la probabilidad de que la parte promovente prevalezca, no debe concederse este remedio a una parte a la que claramente no le asiste la razón con relación a los méritos del recurso principal. Es decir, que para conceder el remedio provisional el tribunal debe estar convencido de que el promovente tiene probabilidades de prevalecer en los méritos. *Véase* J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2da Edición, To. V, Ed. Luiggi Abraham, Publicaciones JTS, (2011) pág. 1695.

En cuanto a la buena fe en el *'injunction',* traído a Puerto Rico en el caso de *Rabell v. Rodríguez,* 24 DPR 561, 569 (1916), se refiere a la doctrina de que nadie puede actuar contra sus propios actos. En este caso, un vecino observó en silencio durante semanas o meses al otro, mientras construía gradualmente una casa en un solar contiguo. Rompía el silencio en intervalos y solo para elogiar la construcción. No mostró señales de protesta ni oposición, para luego solicitar la demolición de la construcción. Véase *J. Cuevas, Tratado de Derecho Procesal Civil,* supra, págs. 1072-1073.

Mientras, por otro lado, la falta de diligencia hace referencia a los procesos durante la tramitación del caso. Esto incluye la incuria o inacción injustificada en solicitar el remedio interdictal. Es decir, cuando el demandante se sienta a descansar sobre su derecho y no actúa con diligencia. *Id,* págs. 1074-1075.

### D.    Honorarios por temeridad

La conducta que amerita la imposición de honorarios de abogado por temeridad es cualquiera que haga necesario un pleito que se pudo evitar o que ocasione gestiones evitables. El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a innecesariamente asumir las molestias, gastos, trabajos e inconvenientes de un pleito. SLG *González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022); *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 546 (2010); *Blas v. Hosp. Guadalupe,* 146 DPR 267, 334-335 (1998); *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).

Algunas instancias en las cuales el Tribunal Supremo de Puerto Rico ha reconocido que una parte actúa de forma temeraria se constituyen cuando:

(1) contesta la demanda y niega responsabilidad total pero posteriormente la acepta,

(2) se defiende injustificadamente de la acción,

(3) cree que la cantidad reclamada es exagerada y es la única razón que tiene para oponerse a las peticiones del demandante, y no admite su responsabilidad pudiendo limitar la controversia a la fijación de la cuantía a ser concedida,

(4) se arriesga a litigar un caso del que se desprende prima facie su responsabilidad, y

(5) niega un hecho que le consta es cierto a quien hace la alegación.

SLG *González-Figueroa v. SLG et al.,* supra, pág. 150; *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011) citando a *Fernández v. San Juan Cement Co., Inc.,* supra, pág. 719; *Blas v. Hosp. Guadalupe*, supra, págs. 335-336.

Una vez un tribunal con competencia determina que se ha incurrido en temeridad, está llamado a imponer, a la parte que así haya actuado, el pago de cierta cantidad de dinero en concepto de honorarios de abogado. *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016). Al respecto, la Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), dispone como sigue:

[...]

(d) Honorarios de Abogado - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

SLG *González-Figueroa v. SLG et al.*, supra, pág. 145.

El antedicho estatuto preceptúa en nuestro esquema procesal la intención de establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149; *Torres Montalvo v. Gobernador ELA*, supra, pág. 778. De ahí que, como regla general, establecida la concurrencia de tal conducta, la condena de honorarios resulta ser imperativa.

Aunque la penalidad por temeridad de una parte no está explícitamente consignada en las Reglas de Procedimiento Civil, supra, es a través de la imposición de honorarios de abogado, que el Tribunal ejerce esta facultad. Así, el juzgador tendrá que adjudicar

el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio. Por tanto, la determinación que en su día emita, ***solo será objeto de revisión si ha mediado abuso de discreción en el ejercicio de su ministerio***. *Colón Santos v. Coop. Seg. Múlt. P.R.,* 173 DPR 170, 188 (2008); *Blás v. Hosp. La Guadalupe,* supra, pág. 334; *Fernández v. San Juan Cement Co.*, supra, pág. 722. En dicho contexto, la doctrina vigente reconoce que un tribunal incurre *"en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando [el juez] le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable".* *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). *Pueblo v. Custodio Colón,* 192 DPR 567, 588-589 (2015).

Es por ello que "la determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y ***solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad***". *SLG González-Figueroa v. SLG et al.*, supra, pág. 150 (2022); *Maderas Tratadas v. Sun Alliance et al,* 185 DPR 880, 926 (2012); *SLG Flores–Jiménez v. Colberg*, 173 DPR 843, 866 (2008). (Énfasis nuestro).

Finalmente, resaltamos que nuestra Alta Curia ha establecido que la imposición de honorarios por razón de temeridad no será apropiada "cuando existe alguna desavenencia honesta en cuanto a cuál de las partes beneficia el derecho aplicable". *Maderas Tratadas v. Sun Alliance et al.,* supra, pág. 926.

**III.**

**A.**

Por encontrarse relacionados entre sí, este tribunal determinó atender el *primer y tercer señalamiento de error* en conjunto.

La parte apelante alega que el Foro Primario erró y abusó de su discreción al (1) desestimar la demanda cuando, supuestamente, no existía ninguna de las instancias provistas en la Regla 10.2 de Procedimiento Civil y (2) al desestimar cuando, aparentemente, no procedía en derecho y contra la política judicial de que los casos se ventilen en sus méritos. Sobre estos señalamientos de error, **la parte apelante no nos coloca en posición de ejercer un juicio sobre los argumentos en corte abierta, por lo que ante la ausencia de la transcripción de la vista procedemos a resolver con los documentos presentados y alta deferencia al foro primario**.

De la sentencia se desprende que, para adjudicar en el caso de autos, el TPI-Aibonito consideró **los argumentos vertidos en sala** y la evidencia documental.[15] Significando esto que la decisión del Tribunal está vinculada a los argumentos y narraciones que se expusieron en sala durante la vista. Esto lo confirma el recurso de apelación instado por el apelante donde narra parcialmente los argumentos en corte abierta.[16]

Lo cierto es, que este Tribunal le merece una deferencia al Foro Primario. Como consignamos en la exposición del derecho previamente, el Tribunal de Primera Instancia es el Foro que tuvo la oportunidad de aquilatar la prueba testifical, y adjudicar credibilidad sobre ella. Por lo que nos resulta forzoso concluir que no estamos en igual posición que el Foro Primario para tomar una

---

[15] Apéndice del Recurso de Apelación, págs. 13-14.
[16] Id. págs. 1-7.

determinación de hechos diferente. Razón por la que entendemos menester resolver con la documentación ante nos, interpretando el derecho basado en esas determinaciones establecidas por el TPI-Aibonito.

*Siempre que sea posible* se debe aplicar la política judicial de que los casos se ventilen en sus méritos, **pero esto no es camisa de fuerza**; mucho menos en un caso de *'injunction'* donde es indispensable cumplir con los requisitos esbozados en ley para su concesión. Es decir, en una situación donde no hay conflicto sustancial en los hechos y basarse -éste- en una controversia meramente de derecho. De la documentación se desprende que las partes y el Tribunal están convencidos de que los daños a la propiedad y la debilidad del talud son como consecuencia del paso del Huracán María del año 2017. De la evidencia presentada, específicamente el informe del ingeniero, y perito de los apelantes, resulta que la condición de la propiedad y el terreno es crítica y progresiva. De tal manera que, en el año 2020, la recomendación profesional del perito fue la relocalización de la vivienda debido a las grietas y a que el terreno continuaba cediendo. Así también, que debían realizar un estudio de estabilidad que no se ha realizado.

En este sentido, hace bien el Tribunal de Primera Instancia en establecer como cuestión de hecho que la parte promovente no fue diligente habiendo poseído el informe hace más de tres (3) años y no haber actuado al respecto. Ahora bien, esa falta de diligencia no es a la que hace referencia nuestro estado de derecho con relación a la concesión del remedio provisional,[17] pero sirve para demostrar la improbabilidad de prevalecer del promovente. Esto es así ya que, al

---

[17] La falta de diligencia para la concesión del interdicto hace referencia a los procesos durante la tramitación del caso. Esto incluye, la incuria o inacción injustificada en solicitar el remedio interdictal. Es decir, cuando el demandante se sienta a descansar sobre su derecho y no actúa con diligencia. Véase J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da Edición, To. V, Ed. Luiggi Abraham, Publicaciones JTS, (2011) págs. 1074-1075.

advenir en conocimiento y no actuar conforme, es el responsable de la situación en la que se encuentra ahora en el año 2024.

De esta forma, provoca que este Tribunal esté convencido de la poca probabilidad de prevalecer del promovente en el pleito en sus méritos. Entendiendo que hace más de tres (3) años tenían el deber de realizar el estudio de estabilidad, bajo la premisa de que no era costo efectivo remediar la situación con la propiedad, y de un panorama que viene afectándoles por más de seis (6) años. De tal manera que culminan exponiendo una reclamación que no justifica la concesión del *'injunction'*.

Por lo expuesto previamente, corresponde a este tribunal, basado en las determinaciones de hechos del Foro Primario, la evidencia compilada y el estado de derecho actual, *modificar* en derecho para *confirmar* la determinación el TPI-Aibonito.

**B.**

La parte apelante plantea, como *segundo señalamiento de error*, que erró el Tribunal de Primera Instancia al determinar que obró de mala fe en el caso de autos e imponer costas y honorarios por temeridad. *Le asiste la razón a la parte apelante.*

De la documentación analizada, incluyendo la sentencia del TPI-Aibonito, se desprenden dos hechos esenciales concernientes a este señalamiento de error. Primero, que desde el comienzo la parte apelante no ha responsabilizado al apelado de ser el causante del desprendimiento del talud ni de los daños a la propiedad. Segundo, en ningún momento han negado hechos que no le son favorables, como lo es el informe del ingeniero.

Se desprende, pues, del expediente que solo han alegado que la remoción llevada a cabo por el apelado podría empeorar la situación del desprendimiento de tierra. También, desde el comienzo han provisto evidencia y documentación que no les favorece. Lo que nos hace concluir que los demandantes, aquí

apelantes, ***desde el comienzo han creído genuinamente que tienen la posibilidad de prevalecer, aun cuando en derecho no les asista la razón.***

Distinto sería si la parte demandante hubiera insistido en responsabilizar a los apelados de los daños ocasionados por el desprendimiento de la pendiente. No obstante, en este caso solo han alegado querer detener la remoción de tierra porque podría, a interpretación de éstos, empeorar esa situación en la que ellos no han sido diligentes.

Sobre la falta de diligencia debemos insistir en que son dos situaciones aisladas, aunque relacionadas un poco entre sí. La falta de diligencia en el caso ante nos es con relación al desprendimiento del talud y los daños a la propiedad, no con los procesos de administrar la justicia ni con la atribución de responsabilidad al demandado.

Para que prospere la imposición de costas y honorarios por temeridad ante la falta de diligencia, es preciso que esta se observe dentro de los procedimientos del litigio y con intención de retrasar o interrumpir el proceso de administrar la justicia. Aun cuando también pudiera prosperar la imposición de costas en un caso donde *prima facie* se desprenda la negligencia de la parte, esto debe ir atado a que esa parte niegue parte de su responsabilidad o niegue hechos relevantes que demuestren su negligencia. Este no fue el caso.

Por lo tanto, a pesar de la deferencia que le tenemos al Foro Primario, nos corresponde *modificar la sentencia.*

**IV.**

Por los fundamentos que anteceden*, modificamos* la sentencia apelada para eliminar la cantidad de $2,000.00 impuesta en honorarios por temeridad y, así modificada, *confirmamos.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones